**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LUCIOUS O. PATRICK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 08-CV-595-GKF-FHM |
| CITY OF TULSA, CITY OF TULSA FIRE DEPARTMENT, JOHN DOE 1, JOHN DOE 2, | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court on the Second Motion for Summary Judgment [Dkt. # 31] of defendant City of Tulsa (the "City"). Plaintiff Lucious O. Patrick ("Patrick") alleges that the City failed to promote him based upon his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The City's first Motion for Summary Judgment addressed Patrick's claims as based on a disparate impact theory, but Patrick insisted that his claims are based not on disparate impact, but on a disparate treatment theory.[1] The court found that the City's initial interpretation of Patrick's claims as based on disparate impact was reasonable, and therefore granted the City leave to file this second motion addressing Patrick's disparate treatment theory. For the reasons set forth below, the City's Second Motion for Summary Judgment must be granted.

### I. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials

---

[1] In Patrick's response to defendant's first Motion for Summary Judgment, he denied that Patrick's claims were based on a disparate impact theory. [*See* Response, Dkt. # 17-2, p. 6 ("Defendant's Disparate Impact argument does not apply and must fail as Plaintiff's claim is one of Disparate Treatment and not Disparate Impact.")]. In Patrick's response to defendant's Second Motion for Summary Judgment, Patrick again explicitly disclaims reliance on a disparate impact theory. [Dkt. # 47, p. 5 (entitling Proposition II of his brief "Plaintiff's Claims Do Not Implicate Disparate Impact"); p. 15 ("Defendant's disparate impact argument does not apply and must fail as Plaintiff's claim is one of disparate treatment and not disparate impact.")].

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, [the court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1264 (10th Cir.2007) (quotation marks and citation omitted). "Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury." *Id.* (quotation marks and citation omitted). To survive a motion for summary judgment, the nonmovant "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).

## II. Undisputed Material Facts

The City submits the following undisputed material facts[2]:

1. Plaintiff is a firefighter employed by the City of Tulsa. (Plaintiff's Complaint, para. 23).

2. Plaintiff at all relevant times held the rank of FD-03 (Captain). (Exhibit A, Plaintiff's Deposition Transcript, p. 9, ll. 2-5).

3. Plaintiff is African-American (Plaintiff's Complaint, para. 23).

4. The Defendant City of Tulsa has FD-04 positions in the Fire Department. They are administrative positions that work a 40-hour work week. FD-04 positions existing in the Safety Services division are Code Enforcement, Hazardous Materials, Public Fire Safety Education, and Fire Investigation. Other FD-04 positions are in the Training division. (Exhibit B, Pay Chart and Exhibit C, Administrative Operating Procedures ("AOP") Section

---

[2]In his response brief, Patrick "admits the Undisputed Material Facts submitted by the City." [Dkt. # 47, p. 3].

809).

5. The evaluation criteria and eligibility requirements for the FD-04 Safety Services positions are published in the Fire Department's AOP 809. Points are awarded in several different areas, including Education, Background Education Relative to the Position (Skills Inventory), Interview, Written Correspondence Exercise, Descriptive Writing Exercise, and the Fire Safety Presentation. (Exhibit C, AOP Section 809 to 809.17).

6. In November 2004, the evaluation criteria were changed. The points available for college credit hours were decreased from a maximum of 20 points for 120 college credit hours or a degree to a maximum of 12. At the same time, the points available for Background Experience Relative to the Position (Skills Inventory) were increased from 15 to 25 (Exhibit D, "Change Copy" of AOP 809).

7. The change to the evaluation criteria was agreed to by the union which represents all Tulsa firefighters except the Chief and one assistant to the Chief, the International Association of Fire Fighters, Local #176 (Exhibit D, "Change Copy" of AOP 809).

8. The change was made in order to broaden the available pool of candidates who could meaningfully compete for an FD-04 position. In particular, TFD management observed instances when firefighters were unsuccessful competing for FD-04 positions in areas where they had considerable relevant experience, but could not overcome the obstacle of the high point value for college credit. (Exhibit E, Defendant's Response to Plaintiff's Interrogatory No. 14 by Chief Allen LaCroix; Exhibit F, Michael Graves Deposition Transcript, p. 25, ll. 24-25, pp. 26-28, ll. 1-16, p. 46 ll. 17-25, p. 47-48; and Exhibit G, Paul Gallahar Deposition Transcript, p. 39, ll. 8-25 and p. 40, ll. 1-13).

9. Plaintiff participated in an assessment and evaluation for an FD-04 position in the Safety

        Services section of the Tulsa Fire Department in June 2005. He finished fifth out of seven candidates. He was not assigned to an FD-04 Safety Services position. (Exhibit H, June 2005 Safety Service Exam Score Sheet).

10. Plaintiff participated in an assessment and evaluation for an FD-04 position in the Safety Services section of the Tulsa Fire Department in March 2006. He finished sixth out of 11 candidates. He was not assigned to an FD-04 Safety Services position. (Exhibit I, March, 2006 Safety Services Exam Score Sheet).

11. The list of qualified candidates for FD-04 Safety Services positions is valid for six months. Any openings for FD-04 Safety Services positions are filled from the list of qualified candidates during that six-month period. (Exhibit J, Paul Gallahar Deposition Transcript, p. 59, ll. 2-14).

12. Plaintiff was next in line to be assigned to an FD-04 Safety Services position when one FD-04 position was moved from the Safety Services division to the Homeland Security division. Paul Gallahar, who was Chief of Safety Services at the time, was unhappy that the position was moved and that Patrick was not assigned. (Exhibit J, Paul Gallahar Deposition Transcript, p. 59, ll. 15-25 and Exhibit K, p. 60, ll. 1-22).

13. Plaintiff did not try again for an FD-04 Safety Services position after the March 2006 assessment. (Exhibit L, Plaintiff's Deposition Transcript, p. 12, ll. 10-22 and p. 13, l. 1).

14. An FD-04 position pays more than an FD-03 (captain) position, and less than an FD-05 (District Chief) position with TFD. (Exhibit B, Pay Chart).

15. Plaintiff believes that the decrease in the value of a college degree in the FD-04 Safety Services evaluation criteria (Exhibit N, Plaintiff's Deposition Transcript, pp. 71-72, ll. 1-7) is discriminatory. He also believes the scoring was subjective (Exhibit M, Plaintiff's

Deposition Transcript, p. 11, ll. 7-25 and Exhibit L, Plaintiff's Deposition Transcript, p. 12, ll. 1-9).

16. Plaintiff's reasons for believing the scoring was subjective were the fact that he scored low (Exhibit O, Plaintiff's Deposition Transcript, p. 26, ll. 3-18), and the points for the Background Experience (Skills Inventory) piece were increased from 15 to 25 (Exhibit N, Plaintiff's Deposition Transcript, pp. 71, ll. 22-25, p. 72, ll. 1-7 and Exhibit P, Plaintiff's Deposition Transcript, p. 52, line 25 and p. 53, ll. 1-8).

17. Plaintiff believes that the subjectivity he alleges is built into the evaluation process allows the assessment panel to "get the people you would like to have in there." (Exhibit Q, Plaintiff's Deposition Transcript, p. 37, ll. 20-25, p. 38, ll. 1-6, p. 42, ll. 2-5, p. 43, l. 25, p. 44, p. 45, ll. 1-3).

18. Former Chief of Training Mike Graves' explanation for the change in evaluation criteria was that it helped remove an almost insurmountable obstacle (the college hours credit) for those with an extensive background in training or public education (Exhibit R, Michael Graves Deposition Transcript, p. 25, ll. 24-25, pp. 26-28, ll. 1-16, p. 31, ll. 13-14, p. 46, ll. 17-25, p. 47-48, p. 49 ll. 1-15), helping them to compete better for a training or public education FD-04 position.

19. Plaintiff did not testify that he disbelieves the explanation given by Mike Graves for the change in evaluation criteria (Exhibit S, Plaintiff's Deposition Transcript, p. 54, ll. 11-25, p. 55, ll. 1-12).

20. Paul Gallahar concurs with Mike Graves' explanation for the change in evaluation criteria. (Exhibit G, Paul Gallahar Deposition Transcript, p. 39, ll. 8-25, p. 40, ll. 1-13).

21. Skip Mason testified that he believes the change in evaluation criteria was made to benefit

Tom Hufford. Hufford is a firefighter who does not have a college degree, but has years of experience in public education as Huffy the Clown (Exhibit T, Skip Mason Deposition Transcript, p. 36, ll. 5-25, pp. 37-38, line 9). (Exhibit U, Affidavit of Paul Thomas "Tom" Hufford).

22. Both times Plaintiff assessed for an FD-04 Safety Services position, he was interested in a community relations/public education position. (Exhibit V, Plaintiff's Deposition Transcript, p. 10, ll. 4-25).

23. Plaintiff's background in public education is the same as other firefighters. He testified that "all of us" have public education experience from doing presentations at schools (Exhibit W, Plaintiff's Deposition Transcript, p. 22, ll. 16-25, p. 23, ll. 1-9) and that another firefighter in an FD-04 Safety Services position does a good job because he has "the same qualities I have, experience on a fire company." (Exhibit X, Plaintiff's Deposition Transcript, p. 58, ll. 14-25, p. 59, ll. 1-12).

24. Plaintiff doesn't know the backgrounds of everyone who took the FD-04 assessments with him (Exhibit Y, Plaintiff's Deposition Transcript, p. 23, ll. 15-25, p. 24-25, p. 26, ll. 1-2, p. 58, ll. 6-13), but admits that Tom Hufford had public safety education experience beyond that of other firefighters and that Paul Bertelli had experience as a TFD training officer.

25. Plaintiff believes that more African-American firefighters have college degrees than do firefighters of other ethnicities. Plaintiff believes this based on "qualifications as far as coming on the job and the people that I know." Plaintiff has not seen or analyzed any data regarding his belief (Exhibit Z, Plaintiff's Deposition Transcript, p. 61, ll. 4-24).

26. In April 2004, an assessment was held for FD-04 Safety Services positions. An African-American firefighter named Clarence Jackson finished first. Three of the top four

6

      finishers from the pool of six candidates were awarded the maximum points of 20 for their college credit hours (Exhibit AA, score sheet from 2004 assessment).

27. Tom Hufford was a successful candidate for an FD-04 Safety Services position in June 2005. Hufford had approximately 19 years of public safety education experience, over and above his regular duties as a firefighter, primarily educating children about fire safety in his role as "Huffy the Clown." (Exhibit U, Affidavit of Paul Thomas "Tom" Hufford with Skills Inventory attachment).

28. Eric "Rick" Thompson was a successful candidate for an FD-04 Safety Services position in March 2006, though he was unsuccessful in June 2005. Thompson used the time in between the June 2005 and March 2006 assessments to take additional courses, improve his Background Experience/Skills Inventory presentation, and add to his civic involvement. (Exhibit BB, Affidavit of Eric "Rick" Thompson).

29. Plaintiff prepared for the March 2006 assessment the "same way" he prepared for the June 2005 assessment. He "studied, went through presentations, did other things." He can't recall whether he did a new Background Experience/Skills Inventory, but "it was going to be along the same lines" as the one he submitted in June 2005 (Exhibit CC, Deposition of Lucious Patrick, p. 34, ll. 24-25, p. 35, p. 36, ll. 1-5).

30. Chief James "Mike" Harris was a member of the assessment panels for the June 2005 and March 2006 FD-04 Safety Services assessments. He testified that the level of competition rose between the June 2005 and March 2006 assessments, and that is the reason for the decrease in points awarded to Plaintiff Lucious Patrick and Herschel Smith in the Background Experience/Skills Inventory area. He specifically remembered that Plaintiff elected to keep the same booklet from one assessment to another, while another candidate,

Eric Thompson, used the time between assessments to revamp his booklet to better present his Background Experience/Skills Inventory credentials (Exhibit DD, Deposition of James Harris, p. 42, ll. 13-25, p. 43-49, p. 50, ll. 1-2).

In his response brief, Patrick submits the following undisputed material facts [Dkt. # 47, pp. 3-5], which the City does not dispute:

31. Plaintiff, an African-American, was given 16 points out of 25 possible points for background experience on the June 2005 FD-04 assessment process. In March 2006, 9 months later, Plaintiff was given only 15 points for background experience, even though he had an additional 9 months of job experience. (Ex. A, Paul Gallaher Deposition, p. 58, ll 2-3).

32. Herschel Smith, an African-American, was given 20 points out of 25 possible for background experience on the June 2005 FD-04 assessment process. In March 2006, 9 months later, Smith was given only 15 points for background experience, even though he had an additional 9 months of job experience. (Ex. A, p. 58, ll 4-5).

33. Eric Thompson, a white firefighter, was given 14 points out of 25 possible for background experience during the June 2005 FD-04 assessment process. In March 2006, 9 months later, Thompson was given 21 points for background experience, an increase of 7 points over the same 9 month period. (Ex. A, p. 57, l. 25 - p. 58, l. 1).

34. Neither Dallas Fortney, Skip Mason or Paul Gallaher could explain how a firefighter could lose background experience points with an additional 9 months of on the job experience. (Ex. B, Deposition of Skip Mason, p. 45, ll 1-5; Ex. C, Deposition of Dallas Fortney, p. 36, ll 10-13; and Ex. A, p. 54, l 18 - p. 55, l 5).

35. Loren Mason testified that he believed the assessment process was manipulated to get Tom Hufford assigned to Safety Services even though Hufford only had 3 points for college

      credit. The assessors gave Hufford the maximum of 25 points for background experience which gave him a score greater than Plaintiff and Herschel Smith, both African-American firefighters. Hufford was assigned to an FD-04 position and Plaintiff was not. Additionally, Hufford only scored 3 out of 10 points on his fire safety presentation and Plaintiff scored 6.3 points and Herschel Smith scored 5.1 points out of 10 possible points. Hufford scored the lowest of all candidates in the 2005 assessment on the fire safety presentation. (Ex. B, pp. 37, l. 15 - pp. 39, l. 21).

36.     In the 2006 FD-04 assessment process, both Plaintiff and Herschel Smith were penalized 3 points for allegedly going over time during their fire safety presentation. Neither was told that there would be a 3 point penalty for going over the 7 minute maximum time for the fire safety presentation portion of the Safety Services Exam. Had Plaintiff not been penalized, his score would have been raised from 76.333 to 79.333, a score that would have placed him in third place and entitled him to an assignment to Safety Services. (Ex. D, Deposition of Herschel Smith, p. 36, ll 2-20, Ex. E, Deposition of Plaintiff, pp. 42, l. 1 - p. 43, l. 12).

### III. ANALYSIS

**A.**     **Racial Discrimination**

In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII, *Baca v. Sklar*, 398 F.3d 1210, 1218 n. 3 (10th Cir.2005), and, as such, this court addresses Patrick's § 1981 and Title VII claims simultaneously. When there is no direct evidence of discrimination, the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is used to assess circumstantial evidence of discrimination. Pursuant to the *McDonnell Douglas* approach, if a plaintiff can make out a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a legitimate non-

discriminatory reason for the adverse employment action. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir.2000). If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.*[3] As an additional burden applicable to Patrick's claim of municipal liability under § 1981, Patrick "must demonstrate that the City's officials acted pursuant to a custom or policy of discriminatory employment practices." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir.2008) (internal quotation marks and citation omitted).

### 1. Prima Facie Case

To make out a prima facie case of discrimination, a plaintiff must demonstrate membership in a protected class, adverse employment action, and disparate treatment among similarly situated employees. *Id.* (citing *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir.2005)). For the purposes of this motion the City concedes that Patrick can make a prima facie case.

### 2. City's Proffered Legitimate Non-Discriminatory Reason

Once a plaintiff makes out a prima facie case of racial discrimination, the burden shifts to the defendant to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *Kendrick*, 220 F.3d at 1226. The City presents evidence demonstrating legitimate reasons for its actions as follows.

First, the City asserts, and Patrick does not dispute, that the decision to decrease the total possible points for College Credits from 20 to 12 and to increase the total possible points for Background Experience/Skills Inventory from 15 to 25 "was made in order to broaden the available

---

[3]Patrick cites two cases for the proposition that his evidentiary burden is not heavy at this stage of the proceedings. [Dkt. # 47, p. 10 (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292-93 (2d Cir.1999); and *Wagner v. Taylor*, 836 F.2d 578, 587-88 n. 60 (D.C.Cir.1987))]. However, these cases, and the quoted portions thereof, pertain to the evidentiary burden attendant to class certification pursuant to Fed.R.Civ.P. 23.

pool of candidates who could meaningfully compete for an FD-04 position. In particular, TFD management observed instances when firefighters were unsuccessful competing for FD-04 positions in areas where they had considerable relevant experience, but could not overcome the obstacle of the high point value for college credit." [City's Undisputed Material Fact # 8]. Furthermore, "[f]ormer Chief of Training Mike Graves' explanation for the change in evaluation criteria was that it helped remove an almost insurmountable obstacle (the college hours credit) for those with an extensive background in training or public education, helping them to compete better for a training or public education FD-04 position." [City's Undisputed Material Fact # 18]. Graves proposed the change after a firefighter "with all the background skills, been an instructor for OSU [Oklahoma State University] for probably 10 or 15 years . . . and [who] you would say would be the ideal training officer came out behind this other individual in the process. He made a near flawless presentation . . . yet because of the point value that was sitting there on the college hours, there's no way he could touch him." [Exh. R, Dkt. # 31-19, pp. 7-8 of 9]. Former Chief of Safety Services Paul Gallahar "concurs with Mike Graves' explanation for the change in evaluation criteria." [City's Undisputed Material Fact # 20].

Second, it is undisputed that "the reason for the decrease in points awarded to Plaintiff Lucious Patrick and Herschel Smith in the Background Experience/Skills Inventory area" is "that the level of competition rose between the June 2005 and March 2006 assessments." [City's Undisputed Material Fact # 30]. It is undisputed "Plaintiff prepared for the March 2006 assessment the "same way" he prepared for the June 2005 assessment" [City's Undisputed Material Fact # 29], and that Patrick "elected to keep the same booklet from one assessment to another, while another [white] candidate, Eric Thompson, used the time between assessments to revamp his booklet to better present his Background Experience/Skills Inventory credentials." [City's Undisputed Material

11

Fact # 30].

Third, the City has produced undisputed evidence that Patrick was not promoted following the 2005 or 2006 assessment because others scored higher and were thus placed higher on the list for promotions. [*See* City's Undisputed Material Fact # 9 (regarding candidates' scores for 2005 assessment); Undisputed Material Fact # 10 (regarding candidates' scores for 2006 assessment)].[4]

In his response brief, Patrick contends the City's evidence is insufficient to establish a legitimate non-discriminatory reason for not promoting him. Patrick's argument is unavailing, as an employer may rebut a prima facie case "simply by producing some evidence that it had legitimate, nondiscriminatory reasons for the decision." *Watson v. Forth Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784 (1988). The court therefore finds that the City has met its burden of articulating a legitimate non-discriminatory reason for the adverse employment action of not promoting Patrick in connection with the 2005 and 2006 assessments.

### 3. Pretext

Once a defendant makes a showing of some legitimate non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to show that the defendant's justification is pretextual. *Kendrick*, 220 F.3d at 1226. "Pretext can be shown by such 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of

---

[4]"The list of qualified candidates for FD-04 Safety Services positions is valid for six months. Any openings for FD-04 Safety Services positions are filled from the list of qualified candidates during that six-month period." [City's Undisputed Material Fact # 11]. It is undisputed that Patrick "was next in line to be assigned to an FD-04 Safety Services position when one FD-04 position was moved from the Safety Services division to the Homeland Security division. Paul Gallahar . . . was unhappy that the position was moved and that Patrick was not assigned." [City's Undisputed Material Fact # 12]. "Plaintiff did not try again for an FD-04 Safety Services position after the March 2006 assessment." [City's Undisputed Material Fact # 13]. Patrick does not contend that the position move is evidence of discrimination.

credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir.2008) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). Pretext can be shown in a variety of ways. *Id.* "[D]ifferential treatment of similarly-situated employees *may* support a finding of pretext." *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1199 (10th Cir.2000) (emphasis in original).

In his response, Patrick challenges "whether or not this addition of additional subjective points gave the panel members an opportunity to allocate those subjective points to the detriment of African-American candidates. Clearly that was the result of the 2005 and 2006 assessments." According to Patrick, he suffered disparate treatment because "[t]he panel members utilized the background experience section of the Safety Services Exam as their mechanism to score lesser educated and lesser qualified white firefighters higher than Plaintiff and Smith." [Dkt. # 47, p. 13]. Specifically, Patrick points to the fact that Eric "Rick" Thompson, who is white, was promoted over Patrick in the 2006 assessment [Dkt. # 47, p. 12], and that Tom Hufford, who is white, was promoted over Patrick in the 2005 assessment [Dkt. # 47, p. 13].

"Generally, 'an employee's own opinions about [his] qualifications do not give rise to a material factual dispute.'" *Lewis v. D.R. Horton, Inc.*, 2010 WL 1063887, at * 7 (10th Cir. Mar. 24, 2010) (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir.1999)). "Instead, [Patrick] 'must come forward with facts showing an overwhelming disparity in qualifications' in order to support an inference of pretext regarding [the City's] justification that [Thompson and Hufford] had superior experience and qualifications." *Lewis v. D.R. Horton, Inc.*, 2010 WL 1063887, at * 7 (10th Cir. Mar. 24, 2010) (quoting *Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir.2010)).

The City has produced undisputed evidence showing that Thompson and Hufford were well

13

qualified candidates and that the points awarded reflected that fact. For example, the improvement in Thompson's score between the June 2005 and March 2006 assessments can be explained by the undisputed fact that "Thompson used the time in between the June 2005 and March 2006 assessments to take additional courses, improve his Background Experience/Skills Inventory presentation, and add to his civic involvement." [City's Undisputed Material Fact # 28]. Conversely, Patrick admits that he "prepared for the March 2006 assessment the "same way" he prepared for the June 2005 assessment. He "studied, went through presentations, did other things." He can't recall whether he did a new Background Experience/Skills Inventory, but "it was going to be along the same lines" as the one he submitted in June 2005." [City's Undisputed Material Fact # 29].

With respect to Hufford scoring higher than Patrick in the 2005 assessment, it is undisputed Patrick sought a position in public education [City's Undisputed Material Fact # 22], and that the Background Experience/Skills Inventory category, which is subjective, is based on experience and skills *relative to the position*. [City's Undisputed Material Fact # 5]. Patrick "admits that Tom Hufford had public safety education experience beyond that of other firefighters" [City's Undisputed Material Fact # 24]. Further, it is undisputed that "Hufford had approximately 19 years of public safety education experience, over and above his regular duties as a firefighter, primarily educating children about fire safety in his role as 'Huffy the Clown.'" [City's Undisputed Material Fact # 27].

Patrick "provides no evidence that he was *so clearly better qualified* than [Thompson or Hufford] that a jury could reasonably conclude that [the City] based its decision on something other than its proffered reason." *Simms*, 165 F.3d at 1330; *Kendrick*, 220 F.3d at 1232 ("Differences in treatment that are trivial or accidental or explained by a non-discriminatory motive will not sustain a claim for pretext." (citing *EEOC v. Flasher*, 986 F.2d 1312, 1320 (10th Cir.1992)).

Patrick also takes issue with the fact that during the 2006 assessment, the panel imposed a

14

three point penalty on Patrick and Herschel Smith, the only other black candidate, for going over the seven minute time limit during their fire safety presentations. The evaluation criteria for the FD-04 Safety Services positions are published in the Fire Department's AOP 809, which includes a "5 to 7 minute Fire Safety Presentation." [Dkt. # 31-4, p. 1]. According to Patrick, "[n]either [he nor Smith] was told that there would be a 3 point penalty for going over the 7 minute maximum time for the fire safety presentation portion of the Safety Services Exam." [Patrick's Undisputed Material Fact # 36]. However, Patrick identifies no evidence showing that any white candidate *was* warned there would be a three point penalty for exceeding the time limit, or that any white candidate did, in fact, exceed the time limit. This court finds that Patrick has not produced sufficient evidence to allow an inference that candidates were treated differently on account of race with respect to penalties for exceeding the time limit.

The Court's "role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." *Simms*, 165 F.3d at 1330. Upon review of the briefs and evidentiary materials, this court finds that Patrick has failed to show there is a genuine issue of material fact as to whether the City's proffered reasons are mere pretext for racial discrimination. *Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1209 (10th Cir.1999) (mere scintilla of evidence in support of the non-movant's position insufficient to create a dispute of fact that is genuine.); *Morgan*, 108 F.3d at 1324 ("plaintiff's allegations alone will not defeat summary judgment"). As a result, Defendant City is entitled to summary judgment on Patrick's Title VII and § 1981 claims.

**B.      Municipal Liability under § 1981**

A municipality cannot be held liable for the actions of its employees under the theory of respondeat superior. *Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000). Plaintiffs seeking to

impose liability on a municipality under § 1981 "must demonstrate that the City's officials acted pursuant to a 'custom or policy' of 'discriminatory employment practices.'" *Carney*, 534 F.3d at 1273 (quoting *Randle v. City of Aurora*, 69 F.3d 441, 446 n. 6, 447 (10th Cir.1995)).

"An unconstitutional deprivation is caused by a municipal '*policy*' if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Carney*, 534 F.3d at 1274 (emphasis in original); *see Randle*, 69 F.3d at 447 (decision of official who possesses final policymaking authority constitutes municipal policy).

The City contends that while Patrick "asserts the assessment panel members manipulated the scores in a discriminatory manner," he "does not assert they are at such a level or have such authority that their acts are the same as the City itself." [Dkt. # 31, p. 13]. Patrick did not respond to this portion of the City's motion. Regardless of whether "the changes in the value of college credit and background experience" amount to a policy, Patrick does *not* challenge the change in evaluation criteria as a racially discriminatory act. [Dkt. # 47, pp. 14-15]. Rather, Patrick's "allegation is that the panel members intentionally discriminated against him by manipulating the scores in the background experience category." [Dkt. # 47, p. 14]. Patrick has not demonstrated that the assessment panel's point allocation in two discrete assessments, and concerning only appointments to FD-04 positions within the Safety Services division of the Tulsa Fire Department, amount to "decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself," *Carney*, 534 F.3d at 1274, that the panel "possesses final authority," *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir.1992), or that its "decisions are not subject to review." *Randle*, 69 F.3d at 448.

A municipal "custom" is "an act that, although not formally approved by an appropriate decision maker, has such widespread practice as to have the force of law. In order to establish a

16

custom, the actions of the municipal employees must be continuing, persistent and widespread." *Id.* (internal quotation marks and citations omitted); *see Randle*, 69 F.3d at 447 (governmental entities may be held liable for a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity).

The City contends Patrick has not produced evidence supporting the establishment of such a custom. Patrick did not respond to this portion of the City's motion. Upon review, this court finds that Patrick has not demonstrated that the City officials acted pursuant to a custom of discriminatory employment practices. Patrick has failed to produce evidence substantiating the allegations in his complaint regarding "ongoing and continuing" discrimination against African-American firefighters seeking promotion. Patrick's unsupported allegations, standing alone, will not defeat summary judgment. *Morgan*, 108 F.3d at 1324.

For these additional reasons, the City is entitled to summary judgment on Patrick's § 1981 claim.

## IV. CONCLUSION

WHEREFORE, defendant's Second Motion for Summary Judgment [Dkt. # 31] is granted.

IT IS SO ORDERED this 12th day of August, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma